THE FROSTBURG PERPETUAL BUILDING ASSOCIATION
   OF FROSTBURG, MD. *vs.* CHARLES H. HAMILL and
   WIFE, and others.

*Charge on a Wife's Separate Estate—Notice.*

In 1866, real estate belonging to H., was sold to H's wife by the
   sheriff under a *fi. fa.*. issued on a judgment against H. and a deed
   duly executed by the sheriff to H's wife.  Afterwards, H. mort-
   gaged the same property to C., trustee for H's wife, to secure to her
   money derived from her father's estate and borrowed by H.   In
   1875, C., as trustee for H's wife, and H. conveyed as grantors, the
   same property by way of mortgage to a building association to
   secure payment of money loaned to H's wife.  This instrument
   containing the usual mortgage conditions and covenants on the
   part of H's wife, was signed, sealed and acknowledged by C., H's
   wife and H. and duly sworn to and recorded.   In proceedings by
   the building association to sell the property described in the alleged
   mortgage, it was HELD:

That this instrument constituted in equity a charge upon H's wife's estate; and that the building association was entitled to enforce the mortgage against the property.

A second mortgagee with actual notice of a first mortgage is not in a position to question the equities of the first mortgagee.

APPEAL from the Circuit Court for Allegany County, in Equity.

The case is stated in the opinion of the Court.

The cause was submitted by the appellant to BARTOL, C. J., BOWIE, MILLER, ROBINSON and IRVING, J. No brief was filed for the appellees.

*William Brace* and *Benjamin A. Richmond,* for the appellant.

BARTOL, C. J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellant, to obtain a decree for the sale of certain real estate described in a mortgage, dated July 12th 1875, exhibited with the bill.

No question is raised with respect to the amount due the appellant which the mortgage was intended to secure; but the single question presented, is whether the mortgage can be enforced against the property and estate of Mrs. Hamill, therein described. To solve this question, it is material to consider:

*First.* The nature of the title or estate held by Mrs. Hamill at the time the mortgage was executed, and

*Secondly.* Whether that instrument is sufficient in its terms to create a lien against her estate.

*First.* It appears from the agreed statement of facts contained in the record, that in January 1866, the property belonged to Charles H. Hamill in fee, that it was

seized by the sheriff under a writ of *fieri facias,* issued upon a judgment recovered against Charles H. Hamill, and on the 3rd day of February 1866, was sold by the sheriff, under said writ, at public sale, and purchased by Catharine Hamill, as appears by the special return made by the sheriff, who by deed, dated February 24th, conveyed the same to her in fee simple. Consequently the property thus acquired, was held by her *to her separate use,* under the provisions of the *Code, Art.* 45, *secs.* 1 and 2, with the right and power "of devising the same as fully as if she were a *feme sole,*" and of "conveying the same by a joint deed with her husband." And with power to charge the same by her contract executed with the concurrence of her husband, as decided in *Hall & Hume vs. Eccleston,* 37 *Md.,* 510, which contract may be enforced in a Court of equity.

It appears from the record, that on the 7th day of May 1866, after the property had been acquired by Mrs. Hamill, as before stated, a deed of mortgage of the same property was made by her husband, to Aden Clary, trustee, for her use and benefit, for the purpose as therein stated of securing to her the payment of the sum of $16,789.59, which was her separate property derived from the estate of her father, and which was loaned to her husband.

That mortgage also embraced certain personal property; but so far as the real estate was concerned, it appears to be an extraordinary document, when it is remembered that the real estate was already vested in her as her separate property. The instrument, however, has no significance in this case, except as showing the reason why it seems to have been thought necessary for Aden Clary as trustee to unite in the mortgage to the appellant of July 12th 1875.

But as Aden Clary had no power to execute such a paper, the mortgage derives no force or validity from the circumstance that he was a party to it. The instrument

must be considered as having been executed by Charles H. Hamill and his wife, and the question to be determined is, whether it constituted a charge upon her separate estate described therein.

The instrument purports on its face to be a mortgage made by Aden Clary, trustee for Catharine Hamill, and Charles H. Hamill. It recites, that in consideration of $1300, now due from Catharine Hamill to the appellant, being money advanced to her by the said corporation, of which she is a member, for the redemption of five shares of its stock, being the par value of said five shares, the said Aden Clary, trustee, and Charles H. Hamill, grant unto the appellant the lots of ground therein described.

Then follows the condition, that if the said Catharine shall truly pay the moneys, and perform the covenants and obligations hereinafter mentioned, to be paid and performed by her, then this mortgage shall be void. Then are enumerated the several covenants of Catharine Hamill.

And it is further provided, that if she shall make default, &c., "then it shall be lawful for the appellant to sell said mortgaged property, after giving at least twenty days public notice, &c., to pay in the first place, the expenses incident to the sale, and in the next place, to pay the amount due on the mortgage." The instrument is signed and sealed by *Aden Clary*, Catharine Hamill, and C. H. Hamill, who acknowledged the same before a justice of the peace as their respective act and deed, and the affidavit of the truth and *bona fides* of the consideration therein stated, was made by the secretary of the appellant, in due form as required by the Code; and the mortgage was duly recorded.

The only ground upon which it is contended, that this instrument does not create a charge upon the real estate of Mrs. Hamill therein described, is that she did not unite in the same as grantor.

For this reason the learned Judge of the Circuit Court held that the mortgage could not be enforced against her property, not being a valid and sufficient deed of conveyance by her.

To constitute a valid deed of conveyance at the common law, it is necessary that the instrument shall contain sufficient words to express the intention of the grantor to convey the estate ; or in other words, the party grantor must unite in the grant. This is a plain principle, fully established by the authorities cited by the Judge of the Circuit Court in his opinion.

The question before us, however, is not whether the instrument is a good legal conveyance of Mrs. Hamill's estate ; but whether it is sufficient to create a charge thereon, which may be enforced in a Court of equity. As before said, the property was held by her to *her separate use,* and it is well settled that it was competent for her to create a charge thereon by her covenant or contract entered into with the concurrence of her husband, whereby her intention to charge the same has been manifested by express terms, or by clear implication.

This was expressly decided in *Hall & Hume vs. Eccleston,* before referred to. We need not repeat the reasoning of the Court in that case, or refer at length to the authorities there cited in the opinion ; they appear to us fully to govern the present case. There the property of Mrs. Eccleston was held to her separate use under the provisions of the Code ; the instrument in question was a joint and a several promissory note of herself and her husband, for the payment of a sum of money, wherein the parties " bound their separate and individual estates," and it was held that this constituted a charge upon the separate estate of Mrs. Eccleston, which could be enforced in a Court of equity.

The instrument before us shows that the consideration for the mortgage passed to Mrs. Hamill, and its purpose

was to secure the performance of the several covenants
entered into by her; and by express terms, it was stipu-
lated that in case of default on her part, the mort-
gagee shall have power to sell the property therein de-
scribed, for the purpose of paying the money due from
her to the mortgagee. This constitutes in equity a valid
charge upon her estate.

The bill of complaint alleges that the property was con-
veyed by Mrs. Hamill and the other parties thereto, by
way of mortgage, &c. That is to say, it alleges a legal
conveyance by Mrs. Hamill. By an agreement of the par-
ties contained in the record, it was provided that "the
bill shall be considered as amended, by inserting a charge
that at the time of executing the alleged mortgage,
Catharine Hamill, as well as the other mortgagors, in-
tended to create a lien on the property therein described
by way of mortgage, and supposed she was so doing, and
by inserting a prayer that said mortgage be reformed and
corrected by inserting her name as grantor; and it was
further agreed that the answer of Mr. and Mrs. Hamill
shall be considered amended, by inserting an admission
therein of the several allegations of the bill and each of
them, and by setting up by way of *plea*, the defence that
the mortgage is not binding on her, nor a valid convey-
ance of, or charge upon her property, by reason of the
fact that she is not named as grantor therein, and this
agreement shall stand for, and be considered as such
amendment of pleadings, and the case is hereby submitted
to the Court for final decree."

Under this agreement, and with the pleadings so
amended, we are of opinion that the appellant is entitled
to enforce the mortgage against the property of Mrs.
Hamill, and to a decree for its sale. So far as respects the
rights of the subsequent mortgagee, William Price, trus-
tee, under the mortgage of Hamill and wife, dated May
29th, 1877, as it appears by the agreement of facts,

that he had actual notice of the mortgage of July 12th, 1875, at the time the mortgage to him was executed, he is not in a position to question the equities of the appellant.

The decree of the Circuit Court will be reversed, and the cause remanded, to the end that a decree may be passed, and further proceedings had in conformity to this opinion. As against Lloyd Lowndes, Jr., administrator of Aden Clary, the bill ought to be dismissed, he having no interest in the matter.

*Decree reversed, and*
*cause remanded.*

(Decided 21st January, 1881.)